OPINION
Appellant Amy Condos (hereinafter "mother") appeals the December 27, 2000 Judgment Entry of the Stark County Court of Common Pleas, Juvenile Division, which granted permanent custody of her three minor children to appellee Stark County Department of Job and Family Services (hereinafter "department") and terminated her parental rights and obligations, upon a finding the best interests of the children would be served by such action.
 STATEMENT OF THE FACTS AND CASE
On February 11, 1999, the department filed a complaint alleging abuse and seeking temporary custody of mother's three minor children: Demarcus (DOB 4/29/95), Brooklyn (DOB 12/31/96), and Desmond (DOB 3/14/98). The complaint was filed after an emergency room physician at Massillon Community Hospital treated Demarcus for injuries which were consistent with child abuse. During an interview with the department, Demarcus disclosed mother's boyfriend "slammed and smacked me with his hand," and "picked me and whooped me so hard that I cried and I cried, and my mommy never helped me." February 11, 1999 Complaint at 2. Demarcus also indicated the existence of domestic violence between mother and her boyfriend as well as abuse of his siblings. The department located the other two children and found both of them in need of medical attention.
Via Judgment Entry filed April 26, 1999, the trial court adjudicated Brooklyn to be a dependent child, and Demarcus and Desmond to be abused children, after mother stipulated to such. The trial court awarded temporary custody of the children to the department and the children were placed in foster care. At the dispositional review hearing on August 9, 1999, the trial court approved and adopted the case plan. The department filed a motion for permanent custody on December 16, 1999, after mother was convicted of three counts of misdemeanor child endangering stemming from the facts giving rise to the filing of the complaint. Mother filed a motion to change legal custody, requesting the trial court, if it found it in the children's best interests not to return them to mother's custody, grant legal custody of the children to Debra Austin, the children's maternal grandmother.
The trial court conducted a hearing on the motion for permanent custody on April 25, 2000. Via Judgment Entry filed May 24, 2000, the trial court terminated mother's parental rights and responsibilities, and granted permanent custody of Desmond, Brooklyn, Demarcus to the department. The trial court also filed a notice of hearing for the best interest determination to be conducted on August 2, 2000. Mother filed a timely notice of appeal. This Court reversed and remanded the matter to the trial court to "conduct the best interests hearing, issue a judgment entry and make its determination regarding the termination of parental rights and grant of permanent custody based upon the status of the evidence presented at the permanent custody hearing and best interests hearing." In the Matter of: Redrick Children, Minor Children (Oct. 31, 2000), Stark App. No. 2000CA00182, unreported at 4.
Upon remand, the trial court conducted a best interests hearing on November 22, 2000. The guardian ad litem filed her report on November 20, 2000. Via Judgment Entry filed December 27, 2000, the trial court terminated mother's parental rights and obligations and granted permanent custody of the children to the department, finding it would be in the children's best interest to do so.
It is from this judgment entry mother appeals, raising the following assignments of error:
 I. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 II. THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO BASE ITS FINDINGS OF FACT ON THE EVIDENCE PRESENTED AT TRIAL.
 III. THE JUDGMENT OF THE TRAIL COURT THAT THE MINOR CHILDREN CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 IV. THE DECISION OF THE TRIAL COURT OVERRULING APPELLANTS [SIC] MOTION FOR A CHANGE OF LEGAL CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 V. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FOUND THAT APPELLANT'S PARENTAL RIGHTS HAD BEEN TERMINATED BEFORE THE BEST INTEREST HEARING WAS HELD.
Any other facts relevant to our discussion of mother's assignment of error shall be contained therein.
 I, II, III
Because mother's first, second, and third assignments of error are interrelated, we shall address said assignments together. In her first assignment of error, mother contends the trial court's finding the best interests of the children would be served by granting permanent custody of the children to the department was against the manifest weight and sufficiency of the evidence. In her second assignment of error, mother asserts the trial court abused its discretion in failing to base its findings of fact on the evidence presented at trial. In her third assignment of error, mother maintains the trial court's finding the minor children could not or should not be placed with mother within a reasonable time was against the manifest weight and sufficiency of the evidence.
We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279.
In her first assignment of error, mother essentially argues the trial court failed to take into consideration the factors set forth in R.C.2151.414(D). R.C. 2151.414(D) provides:
 * * * the court shall consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child * * *;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
Mother submits the trail court must consider the interaction and interrelationship of the children with her. We do not disagree, but find the trial court did consider this factor.At the best interests hearing on November 22, 2000, Norma Thorpe, an ongoing family services worker with the department, testified regarding the behavioral problems exhibited by the children. Thorpe testified Demarcus is a very aggressive child, does an amount of acting out, and requires structure and someone to work with him. When Brooklyn first entered foster care, she had terrible temper tantrums, laying down and hitting her head on the floor. Thorpe noted Brooklyn's behavior has stopped with some counseling, the structure of her foster home, and her foster mother's working with her. Desmond does not exhibit any behavioral problems, although Demarcus does set him up in a typical big brother/little brother manner.
With respect to visits with mother, Thorpe testified the children are very demanding, which places a strain on the relationship. The children want their own ways and demand such immediately. Thorpe commented mother is not able to deal with the three children. Thorpe acknowledged the children care about mother, but noted their response to her often had more to do with what they could get from mother or get away with with mother. Despite this bond, Thorpe stated her belief the benefit for the children of having a permanent home outweighed the break in that bond. Thorpe noted mother continued to deny responsibility for the happenings in her home and did not place the needs of the children before her own needs. Thorpe further testified the children are bonded with their foster families, and Brooklyn, in particular, is very bonded to her current foster family and her perspective adoptive family.
On cross-examination, Thorpe stated mother has visited the children regularly during the pendency of the case. Thorpe testified Debra Austin had visits with the children when the department was considering placing the children in her home. Thorpe stated the department is not currently conducting sibling visitation because of problems with Demarcus' sexually acting out on Brooklyn. Thorpe also noted the children recognize and know their relatives.
Mother testified on her own behalf at the best interests hearing. Mother described the children's reactions to her at visits, running to her, yelling her name, and hugging her legs. Mother acknowledged the boys do not have difficulty leaving the visits, but stated her belief this was because their foster mother let them talk to mother on the phone. However, Brooklyn had a difficult time separating from mother, often crying at the end of the visits.
Mother also asserts the trial court must consider the wishes of the children. At the best interests hearing, mother testified all of the children have told her they want to come home. No other evidence of the children's wishes was presented.
In its May 24, 2000 Findings of Fact and Conclusions of Law, the trial court recognized its duty to consider the wishes of the child as provided by in R.C. 2151.414(D)(2). The fact the trial court did not place great weight on mother's testimony regarding the children's wishes does not equate to the trial court's failure to consider those wishes. Furthermore, the children's wishes is one of five enumerated factors a trial court must consider. R.C. 2151.414(D) does not bind the trial court to the children's wishes or prevent the trial court from overriding those wishes if it is in the best interests of the children. Accord, In re:Carter (Nov. 2, 2000), Cuyahoga App. No. 76463, unreported.
Additionally, mother submits the trial court must consider subsection (D)(4), the need for a legally secure permanent placement and whether such can be achieved without a grant of permanent custody to the department. In support of her position, mother references the testimony of Debra Austin, the children's maternal grandmother, who testified she is willing to take custody of all three children. Austin stated her belief, despite Demarcus' behavior problems, the children could be placed together under her direct supervision. On cross-examination, Austin acknowledged her goal was to gain custody of the children in order to reunite them with mother because, "[t]hey belong with their mother." November 22, 2000 T. at 35.
As the trier of fact, the trial court is free to accept or reject any or all of the testimony of the witnesses and assess the credibility of those witnesses. We find the record contains competent, credible evidence to support the trial court's determination it was in the children's best interests to grant permanent custody to the department.
We now turn to mother's second assignment of error. Mother argues the trial court abused its discretion because it failed to base its findings of fact on evidence presented at the hearing. Specifically, mother takes issue with the trial court's Finding of Fact No. 8 in which the trial court states:
 * * * The court heard testimony that the mother continues to associate with known gang members, that she continues to date a known gang member who is a minor, that drug activity and other criminal activity is practiced by these gangs, that the safety of the children is compromised by this behavior, and that the mother is unable to insure the safety of the children.
Mother maintains there is no evidence to support these findings. We disagree. Diana Murphy, a parole officer assigned to the Probation Department of the Ohio Adult Parole Authority, testified she has been mother's parole officer since November 11, 1999. Murphy testified regarding the special conditions the trial court placed on mother. Although the conditions of supervision prohibit mother from associating with any known gang member, Murphy testified regarding several occasions on which she had to speak with mother due to mother's failure to abide by this condition. Murphy testified mother has had on-going contact with Rayvon Singleton, a known Rated R gang member, who physically assaulted mother on at least one occasion, and who had to be physically removed by security guards from the apartment complex where mother resided. Murphy also noted Rated R gang members were alleged to have caused the injuries to the children. Murphy further stated mother denied all responsibility for the injuries to the children and denied she failed to protect the children. Based upon the foregoing testimony, we find the trial court had sufficient evidence upon which to base Finding of Fact No. 8.
We now turn to mother's third assignment of error. Mother asserts the trial court's finding the children cannot or should not be placed with her within a reasonable time was against the manifest weight and sufficiency of the evidence.
R.C. 2151.414(B) states, in pertinent part:
 (B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
(b) The child is abandoned.
 (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
(Emphasis added).
In reaching this determination, the trial court relied upon R.C.2151.414(E)(1) which provides:
 (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
(Emphasis added).
We find the trial court's finding the children could and should not be placed with appellant within a reasonable period of time is supported by the evidence. Although mother substantially complied with her case plan, the evidence established mother continued to have contact with the gang members who allegedly abused the children. This particular failure to comply reflects mother's refusal to accept responsibility for the events which led to the removal of the children from her home. Witness after witness testified mother refused to assume any responsibility for the injuries to the children or her failure to protect them, repeatedly placing her own needs above the safety of the children. Based upon the foregoing, we find the decision of the trial court to grant permanent custody to the department was not against the manifest weight of the evidence.
Mother's first, second, and third assignment of error are overruled.
 IV
In her fourth assignment of error, mother maintains the trial court's decision to overrule her motion for change of legal custody was against the manifest weight and sufficiency of the evidence.
In her motion, mother submits Debra Austin is an appropriate placement for the children because she is a former police officer, a current employee of the Ohio Department of Youth Services, and an approved foster parent. The record reveals, however, information learned during the department's investigation into this possible relative placement established a change of custody to Austin would not be in the children's best interests.
Norma Thorpe testified regarding the home study she completed on Austin's home in April, 1999. Thorpe allowed Austin to facilitate visitation between mother and the children. Although Thorpe informed Austin either she or the children's aunt must be present and supervise all visits between mother and the children, Austin permitted mother to have unsupervised visitation between January, 2000, and March, 2000. As a direct result of the relatives' failure to abide by the directions of the department, mother violated the terms of her parole, which prohibited her from being with the children unsupervised.Based upon this evidence, we find the trial court's decision to overrule mother's motion for change of legal custody was not against the manifest weight or sufficiency of the evidence.
Mother's fourth assignment of error is overruled.
 V
In her final assignment of error, mother argues the trial court erred as a matter of law in finding her parental rights had been terminated prior to conducting the best interest hearing. Specifically, mother takes issue with the trial court's statement in its December 27, 2000 Judgment Entry, "The [department] filed a complaint for permanent custody on April 25, 2000 [,] and parental rights were terminated at the permanent custody hearing of May 25, 2000." December 27, 2000 Judgment Entry at 1, unpaginated.
We agree with mother the trial court erred in finding mother's parental rights were terminated on May 25, 2000. However, we find such error to be harmless given the trial court's subsequent determination, upon hearing after remand, of the children's best interests.
Mother's fifth assignment of error is overruled.
The judgment of the Stark County Court of Common Pleas, Juvenile Division is affirmed.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant.
 _________________ Hoffman, P.J.
Farmer, J. and Boggins, J. concur.